IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DANIELA CASTELLANOS,<br><br>Defendant. | Case No. CR15-2037<br><br>REPORT AND RECOMMENDATION |

TABLE OF CONTENTS

I. INTRODUCTION ................................... 1

II. PROCEDURAL HISTORY ........................... 2

III. ISSUE PRESENTED ............................... 2

IV. RELEVANT FACTS ............................... 2
   A.   Application .................................. 2
   B.   Affidavit .................................... 4
       1.   Probable Cause ........................ 5
       2.   Necessity ............................. 5

V. DISCUSSION .................................... 7
   A.   Probable Cause .............................. 8
   B.   Necessity ................................... 11

VI. RECOMMENDATION ............................. 12

## I. INTRODUCTION

On the 22nd day of March 2016, this matter came on for hearing on the Motion to Suppress Wiretap Evidence (docket number 189) filed by Defendant Daniela Castellanos

on March 11, 2016. The Government was represented by Assistant United States Attorney Lisa C. Williams. Defendant appeared in court and was represented by her attorney, Wallace L. Taylor.

## II. PROCEDURAL HISTORY

On August 26, 2015, Defendant and ten others were charged by indictment with one count of conspiracy to distribute methamphetamine. Defendant did not appear until January 11, 2016. Trial was initially scheduled for March 14, but was later continued to May 2 and consolidated with the trial of the other defendants. At Defendant's request, the trial was continued again to August 8.

## III. ISSUE PRESENTED

Defendant asks the Court to suppress any communications obtained through a Title III wiretap of "target telephone 16." Defendant argues the application for the wiretap and supporting affidavit did not provide probable cause for the Court's Order. Defendant also argues the Government failed to show a wiretap was "necessary."

## IV. RELEVANT FACTS

### A. Application

On February 25, 2015, Assistant United States Attorney Lisa C. Williams presented an application for a Title III wiretap on "target telephone 16" to Chief Judge Linda R. Reade.[1] (Also included in the application was a request to continue a wiretap which was previously approved for target telephone 9.) Attached to the application were the necessary memorandum of authorization and letter of approval from the Department of

---

[1] The application is captioned In the United States District Court for the Southern District of Iowa, but Chief Judge Reade is cross-designated in the Southern District of Iowa.

Justice. Also attached was a 107-page affidavit signed by Task Force Officer Bryan Furman.[2]

The application briefly describes the history of Title III wiretaps obtained in investigating the drug trafficking organization believed to be led by Mario Murillo-Mora.

- On October 23, 2014, a wiretap was approved on target telephone 2, being used by Raymond Ohl. Monitoring of TT2 ceased on January 18, 2015.

- On October 31, 2014, the Court authorized a wiretap on target telephone 3, being used by Corey Dewald, and target telephone 4, being used by Justin Luther. Monitoring of TT3 and TT4 continued until November 29, 2014.

- On November 20, 2014, a wiretap was authorized on target telephone 5, being used by Brittney Lehr. Monitoring of TT5 was discontinued on February 13, 2015.

- On December 12, 2014, the Court authorized a wiretap on target telephone 7, being used by Donita Urban. At the time the application for a wiretap on TT16 was submitted on February 25, 2015, the interception of TT7 was ongoing, but was scheduled to end on March 10, 2015 unless extended by further court order.

- On January 15, 2015, the Court authorized a wiretap on target telephone 11, used by Derrick Plunkett. At the time the application for a wiretap on TT16 was submitted on February 25, 2015, the interception of TT11 was ongoing, but was scheduled to end on March 10, 2015 unless extended by further court order.

---

[2] Copies of the application, required authorizations, and supporting affidavit were attached to the instant Motion to Suppress as docket number 189-2.

- On January 29, 2015, the Court authorized a wiretap on target telephone 9 and target telephone 15, which were being used by Murillo-Mora. The wiretap was authorized through February 28, 2015.

Based on the information contained in Officer Furman's affidavit, the Government asked that the wiretap authorization be extended on TT9, and that a wiretap be authorized on TT16, which was also used by Murillo-Mora.

## B. *Affidavit*

In his affidavit, Task Force Officer Bryan Furman states he has been an officer with the Cedar Rapids Police Department since July 1994. Since September 2009, Furman has been assigned to the DEA Task Force in Cedar Rapids. Furman avers that based on his investigation, including information provided to him by other law enforcement officers, there was probable cause to believe that at least 60 persons (known and unknown) were committing violations of the federal controlled substance laws. Furman's sources of information included his own experience in investigating narcotics trafficking and narcotics trafficking organizations, oral and written reports and documents received from other law enforcement agencies and task forces, discussions with other experienced narcotics investigators, physical surveillance conducted by himself and others, public records, telephone toll records, pen register and trap and trace information, telephone subscriber information, and statements of confidential sources. Furman specifically relied on information provided by Iowa Division of Narcotics Enforcement ("DNE") Special Agent Kelly Meggers, who has been assigned to the DEA Task Force since April 2007.

The affidavit identifies 27 persons, *not* including Defendant Daniela Castellanos, as "target subjects." In addition, the affidavit identifies 33 unidentified individuals who were intercepted on previous Title III wiretaps. Officer Furman describes the role which law enforcement believed each individual was playing in the Murillo-Mora drug trafficking

organization. The affidavit describes the involvement of a confidential source ("CS1") in the investigation, and states the reasons why it was believed that CS 1 was credible.

### 1. Probable Cause

Starting on page 33 of the affidavit, and continuing through page 59, Officer Furman describes the facts establishing probable cause for issuance of a Title III wiretap on TT 16. The affidavit "incorporates by reference" ten prior affidavits submitted for wiretaps on other phones, as described in the affidavit.[3] All but one of those affidavits was submitted to Chief Judge Reade, who approved the order authorizing a wiretap on Target Telephone 16.[4]

The affidavit describes various text messages and conversations initiated by Murillo-Mora on target telephone 16, or received by Murillo-Mora on that telephone. Based on information previously obtained by Officer Furman, as described in the ten preceding affidavits, and based upon his extensive training and experience, Furman opined that the communications represented discussions regarding the distribution and sale of methamphetamine. According to information obtained through a court-ordered pen register and trap and trace device, target telephone 16 sent or received 641 text messages from 60 different telephones during the 12-day period from February 6, 2015 to February 17, 2015. Many of those communications occurred with known drug dealers, as described in the 10 prior affidavits.

### 2. Necessity

Starting on page 59 of the affidavit, and continuing through page 102, Officer Furman describes the "need" for a wiretap, by listing the other investigation techniques

---

[3] The first 10 affidavits total nearly 700 pages. Copies of all the affidavits were introduced at the hearing as Government's Exhibit 1.

[4] The affidavit dated October 31, 2014, was submitted to Judge John A. Jarvey of the Southern District of Iowa, who is cross-designated in the Northern District of Iowa.

already employed. As detailed in the affidavit, authorities had previously obtained wiretaps on target telephones 2, 3, 4, 5, 7, 9, 11, and 15. Because Murillo-Mora had discontinued his use of TT15, however, it was necessary to obtain a wiretap on TT16 "to fully capture the extent of MURILLO-MORA's communication and put communications intercepted over Target Telephone 9 into an appropriate context."[5]

Investigators employed a confidential source ("CS1") in their investigation of other members of the Murillo-Mora drug trafficking organization, but became concerned that because of CS1's personal relationships, "which may be intimate in nature," CS1 may disclose information regarding the investigation to one or more subjects of the investigation. In addition, investigators learned that CS1 had a "greater level of involvement than previously known." Accordingly, investigators formally "deactivated" CS1 in November 2014, and CS1 was no longer available as a source of information. The affidavit also describes other efforts to recruit cooperating individuals.

The affidavit describes investigators' limited success in conducting controlled purchases of methamphetamine. Investigators also conducted physical surveillance at various locations, but Officer Furman reported in the affidavit that "[s]urveillance to date has failed to provide additional insight into the organization and DTO members are seldom seen during surveillance."[6] The affidavit also described some of the "obstacles" encountered in attempting to conduct additional surveillance. According to the affidavit, "[s]urveillance by itself would not prove effective in uncovering the full scope of the conspiracy or those DTO members position within the conspiracy."[7] Furman opined,

---

[5] Furman's Affidavit at 66 (docket number 189-2 at 86).

[6] *Id.* at 76 (docket number 189-2 at 96).

[7] *Id.* at 78 (docket number 189-2 at 98).

however, that "continued surveillance done in conjunction with electronic surveillance will achieve these objectives and lead to the seizure of drugs and assets."[8]

Officer Furman stated in his affidavit that an undercover agent would be unable to infiltrate the drug trafficking organization without creating "a dangerous situation for the UC." Search Warrants were employed by investigators, but Furman believed that the execution of additional search warrants did not appear to be "feasible at this time." In fact, Furman opined that "[t]he execution of additional search warrants could have more adverse effects on the investigation."[9]

The affidavit also describes interviews conducted by investigators, the limitations associated with trash searches, and the attempted use of other surveillance techniques. According to the affidavit, "[b]ecause of the prior trash search and investigation, LUTHER now maintains control of his trash allowing only sanitation workers access at the time of scheduled pickup, removing the opportunity for investigators to conduct a search."[10] The affidavit also describes the uses and limitations of pen registers and trap and trace devices. Finally, the affidavit describes the use, and limitations, of a financial investigation conducted on certain members of the drug trafficking organization.

## V. DISCUSSION

The interception of wire, oral, or electronic communications (commonly referred to as a "wiretap") is authorized by 18 U.S.C. § 2518. On February 25, 2015, Chief Judge Linda R. Reade entered an order authorizing a wiretap on target telephone 16 for a period of 30 days. Defendant asks that communications intercepted pursuant to the order be suppressed because the application and supporting affidavit did not provide probable cause

---

[8] *Id.* at 82 (docket number 189-2 at 102).

[9] *Id.* at 87 (docket number 189-2 at 107).

[10] *Id.* at 93 (docket number 189-2 at 113).

7

for the issuance of the order. Alternatively, Defendant argues the application and supporting affidavit did not meet the "necessity" requirement found in the statute.

## A. Probable Cause

An *ex parte* order authorizing the interception of wire, oral, or electronic communications requires two probable cause findings. The judge must first determine "on the basis of the facts submitted by the applicant" that there is probable cause to believe that an individual is committing a particular offense (including the distribution of controlled substances). 18 U.S.C. § 2518(3)(a). The judge must also find there is probable cause to believe that communications concerning that offense will be obtained through the wiretap. 18 U.S.C. § 2518(3)(b). The Eighth Circuit Court of Appeals has "long held that the 'statutory probable cause standards set out in Title III *are co-extensive* with the constitutional requirements embodied in the fourth amendment.'" *United States v. Gaines*, 639 F.3d 423, 430 (8th Cir. 2011) (quoting *United States v. Leisure*, 844 F.2d 1347, 1354 (8th Cir. 1988)) (emphasis added in *Gaines*). *See also United States v. Thompson*, 690 F.3d 977, 984 (8th Cir. 2012) ("The probable cause requirement in this statute is linked to the Fourth Amendment.").[11]

Accordingly, in considering an application for a wiretap, "district courts must make a 'practical, common-sense decision whether,' considering the 'totality-of-the-circumstances there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "'It is sufficient that the information in the affidavit, when assessed in its totality, was

---

[11] The Court notes parenthetically that while the "probable cause" requirement found in § 2518 and the Fourth Amendment are "coextensive," the "particularity" requirement for Title III wiretaps is not "coextensive" with the particularity standards of the Fourth Amendment. *United States v. Gaines*, 639 F.3d 423, 430 (8th Cir. 2011). Section 2518(1) sets forth the specific information which must be included in an application for a wiretap. Defendant in this case does *not* argue that the application fails to meet the particularity requirements of § 2518.

8

sufficient to support a reasonable belief' that evidence of criminality by the subject of surveillance would be obtained." *Leisure*, 844 F.2d at 1354 (quoting *Carter v. United States*, 729 F.2d 935, 939 (8th Cir. 1984)).

Defendant argues that Officer Furman's affidavit does not establish probable cause to believe that communications involving the sale of drugs could be obtained through a wiretap on target telephone 16. For example, Defendant points to paragraph 20 of the affidavit, which among other things asserts that Murillo-Mora was using TT16, and argues that "no facts are given to substantiate that conclusory statement." According to Defendant, TT16 "could have been used by anyone in Marshalltown." Similarly, Defendant notes that paragraph 26 of the affidavit avers that "investigators have learned that MURILLO-MORA uses multiple telephones to communicate regarding drug trafficking," but argues that "no facts are given to substantiate that statement." Defendant's argument completely ignores the other allegations found in Furman's affidavit, and disregards entirely the allegations found in the 10 preceding affidavits. Defendant would apparently require each paragraph standing on its own to contain all of the information supporting the allegation found in that paragraph. Obviously, that is an impossibility and not required. In considering an application for a wiretap, the Court makes a "practical, common-sense decision" whether there is a "fair probability" that communications concerning a criminal offense will be obtained through the wiretap, considering the "totality of the circumstances." *Thompson*, 690 F.3d at 984, and 18 U.S.C. § 2518(3)(b).

Murillo-Mora's extensive involvement in the distribution of drugs is documented not only in Officer Furman's affidavit in support of a wiretap on target telephone 16, but also in prior affidavits submitted in support of wiretaps on other phones. Defendant ignores transcripts of text messages and oral conversations intercepted pursuant to prior orders for wiretaps. Defendant also discounts Furman's interpretation of text messages

and phone conversations between various co-conspirators. The affidavit establishes Furman's extensive experience in investigating large-scale drug trafficking organizations. When evaluating the evidence submitted in support of a wiretap, the Court may rely on conclusions reached by the affiant based on his training and experience. *United States v. Spotted Elk*, 548 F.3d 641, 662-63 (8th Cir. 2008).

The probable cause requirement of 18 U.S.C. § 2518 has two parts: There must be probable cause to believe an individual is committing a particular offense, 18 U.S.C. § 2518(3)(a), and there must be probable cause to believe that communications concerning that offense will be obtained through the requested wiretap. 18 U.S.C. § 2518(3)(b). "The probable cause showing required by section 2518 for electronic surveillance does not differ from that required by the fourth amendment for a search warrant." *United States v. Macklin*, 902 F.2d 1320, 1324 (8th Cir. 1990).

> The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Macklin*, 902 F.2d at 1324 (quoting *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983)).

I believe the facts submitted in Officer Furman's affidavit, together with the facts submitted in the 10 preceding affidavits, when considered in a commonsense fashion, clearly establish probable cause to believe that Murillo-Mora was engaged in the unlawful distribution of a controlled substance. Moreover, there was probable cause to believe that communications pertaining to the drug trafficking could be obtained through a wiretap on target telephone 16. Accordingly, I believe the application and supporting affidavit satisfy the probable cause requirements of § 2518(3)(a) and (b).

## B. Necessity

It is not enough, however, that the application established probable cause to believe communications concerning a particular offense would be obtained through a wiretap. In addition, the judge must determine that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(3)(c). "The necessity requirement of § 2518 ensures 'that wiretaps are not routinely employed as the initial step in an investigation.'" *United States v. Milliner*, 765 F.3d 836, 839 (8th Cir. 2014) (quoting *United States v. Jackson*, 345 F.3d 638, 644 (8th Cir. 2003)). The Eighth Circuit Court of Appeals has interpreted this requirement to restrict wiretaps to situations in which they are necessary as well as reasonable, "but not to require the government to show 'the exhaustion of specific or all possible investigative techniques before wiretap orders could be issued.'" *Thompson*, 690 F.3d at 986 (quoting *United States v. Daly*, 535 F.2d 434, 438 (8th Cir. 1976)). "Whether the statutory requirement is met is to be determined by the issuing judge in a commonsense manner." *Id.* (quoting *Macklin*, 902 F.2d at 1327). "If law enforcement officers are able to establish that conventional investigatory techniques have not been successful in exposing the full extent of the conspiracy and the identity of each coconspirator, the necessity requirement is satisfied." *Milliner*, 765 F.3d at 839 (quoting *United States v. West*, 589 F.3d 936, 939 (8th Cir. 2009)). "The government is simply not required to use a wiretap only as a last resort." *Macklin*, 902 F.2d at 1327.

In his supporting affidavit, Officer Furman describes in detail the other investigative procedures used in this case. Furman also identifies the procedures which were not used, and the reasons why he felt they would be unsuccessful. For example, the confidential source used in this case had limited information and, because of a relationship with two conspirators, was thought to be a security risk. The use of an undercover officer "to reach the higher levels of the conspiracy" was thought to be "highly dangerous" and of limited

11

utility. Investigators conducted physical surveillance, conducted interviews, performed trash searches, and obtained search warrants. Investigators also obtained orders authorizing pen registers and trap and trace devices. Because of the nature of the conspiracy, however, investigators concluded it was necessary to obtain wiretaps on the key players' phones, including Murillo-Mora, to determine the identity and involvement of the conspirators.

Defendant suggests the Government could have simply arrested the various conspirators and "forced" them to cooperate. I believe Defendant's suggestion in this regard is unrealistic. First, it is unclear what "force" Defendant suggests should have been employed. Second, while it may be easy enough to arrest and prosecute individuals following a simple drug transaction, investigating a wide-spread conspiracy to distribute drugs requires more sophistication. To identify top-level conspirators and establish their involvement in the conspiracy requires more than arresting street-level distributors and "forcing" them to cooperate.

A commonsense review of Officer Furman's affidavit supports a finding that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(3)(c). It is not necessary for investigators to exhaust every possible investigative technique before a wiretap order can be issued. *Thompson*, 690 F.3d at 986. As the Court noted in *Macklin*, "[t]he government is simply not required to use a wiretap only as a last resort." 902 F.2d at 1327. Accordingly, I believe the application and supporting affidavit met the necessity requirement found in 18 U.S.C. § 2518(3)(c).

## VI. RECOMMENDATION

For the reasons set forth above, it is respectfully **RECOMMENDED** that the Motion to Suppress Wiretap Evidence (docket number 189) filed by Defendant Daniela Castellanos be **DENIED**. The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that

within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court. *The parties are reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections." Accordingly, if the parties are going to object to this Report and Recommendation, they must promptly order a transcript of the hearing held on March 22, 2016.*

DATED this 5th day of April, 2016.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA